**In re Thomas Clifford DUKE, d/b/a Thomas C. Duke, D.C., Debtor.**

**Bankruptcy No. 82–20219.**

United States Bankruptcy Court,
D. Kansas.

Dec. 8, 1982.

Thomas Clifford Duke, pro se.

Maurice B. Soltz, of Soltz & Shankland, Robert L. Serra, Kansas City, Kans., for debtor.

Michael H. Berman, of Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for credit union.

Joseph H. McDowell, Kansas City, Kans., trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for confirmation hearing on May 18, 1982. The debtor, Thomas Clifford Duke, appeared by his attorney of record, Maurice B. Soltz of Soltz & Shankland. Missouri Central Credit Union appeared by its attorney of record, Michael H. Berman of Berman, DeLeve, Kuchan & Chapman. Also appearing was Joseph H. McDowell, Standing Trustee.

The Court sustained an objection to confirmation by Missouri Central Credit Union (Credit Union), and promised a written opinion since the debtor indicated that he would appeal. The parties duly filed suggested findings of fact and conclusions of law. The following constitutes the Court's written opinion sustaining the Credit Union's objection to confirmation.

## FINDINGS OF FACT

The parties agreed that the facts were virtually undisputed. Based on their suggested findings of fact and conclusions of law, and the file herein, the Court finds as follows:

1. That the Court has jurisdiction over the parties and the subject matter; and that venue is proper.

2. That the debtor, a Missouri resident, and his wife, filed a joint Chapter 7 petition in the Western District of Missouri in September of 1980. The Credit Union filed a Complaint to Determine Dischargeability and Objection to Discharge. After a trial, the Honorable Frank P. Barker, Jr. entered an Order Denying Discharge on January 12, 1980. Judge Barker denied the debtor (but not his wife) a discharge under §§ 727(a)(3) and 727(a)(4); and he did not reach the § 523 issues. The debtor did not appeal that decision.

3. That thereafter, the Credit Union filed a lawsuit against the debtor in the Associate Circuit Court of Jackson County, Missouri; and on March 15, 1982, the Credit Union received a judgment for $4,524.86 plus costs.

4. That on that same date, March 15, 1982, the debtor filed the Chapter 13 petition herein. He proposed a plan compromising unsecured debts at ten percent.

## CONCLUSIONS OF LAW

### I.

Missouri Central Credit Union objected to confirmation on the ground that § 1325(a)(4) had not been complied with. That section states:

"§ 1325. Confirmation of plan.

*(a) The court shall confirm a plan if—*

\* \* \* \* \* \*

*(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;"*

The Credit Union argued that the value to be distributed through the plan was less than the value that would be received in a Chapter 7, since the debtor would be denied a discharge because of the res judicata effect of the prior denial of discharge. This

Court previously ruled that § 1325(a)(4) did not prevent the compromise of a debt that would be nondischargeable in a Chapter 7. See *In re Syrus,* 12 B.R. 605, 4 C.B.C.2d 1172, CCH ¶ 68,310 (Bkrtcy.D.Kan.1981). This Court found that a judgment of non-dischargeability did not insure one hundred percent collectability; and, in fact, that it was impossible to determine the degree of collectability and thus, the value of a non-dischargeable claim.

■ The facts herein are distinguishable in that the debts were not determined non-dischargeable; rather, the debtor was denied a discharge in toto. However, the Court would face an insurmountable task in determining the collectability of all of the claims listed in the prior Chapter 7. Furthermore, a denial of discharge also does not guarantee collectability of all or even part of the listed debts. Therefore, this Court must deny the Credit Union's objection with respect to § 1325(a)(4).

### II.

The Credit Union argued that the debtor's proposal of a Chapter 13 plan within three months after the denial of a Chapter 7 discharge demonstrated that the Plan was not proposed in good faith as required by § 1325(a)(3). The meaning of the good faith requirement has been one of the most litigated issues under the Code. See Cyr, *The Chapter 13 "Good Faith" Tempest: An Analysis and Proposal for Change,* 55 American Bankruptcy L.J. 271 (summer, 1981). The legislative history fails to shed any light on the matter. See H.R. 95–595, 95th Cong., 1st Sess. (1977) 118, U.S.Code Cong. & Admin.News 1978, p. 5787.

Bankruptcy Judge Conrad K. Cyr strongly disagrees with the growing number of courts who construe "good faith" as substantial, meaningful, or at least some minimal amount of repayment to creditors. He contends that good faith has the historical meaning it had under the Bankruptcy Act, that the plan conformed with the provisions, purpose and spirit of Chapter 13.

It appears that the purpose and spirit of Chapter 13 is to give debtors a fresh start with special advantages that a Chapter 7 fresh start does not have. The Chapter 13 debtor retains possession of his property, completely insulates his co-debtors during the life of the plan, and is entitled to compromise certain debts that would be nondischargeable in Chapter 7. The price for these advantages is strict compliance with the confirmation requirements of § 1325(a)(3).

Given the liberalness of Chapter 13, this Court held that a lack of good faith would be found in extraordinary circumstances. *In re Bixby,* 10 B.R. 456, 4 C.B.C.2d 485, CCH ¶ 68,025 (Bkrtcy.D.Kan.1981). There this Court found that the fact that a debtor received a Chapter 7 discharge four years before filing a Chapter 13, alone, was insufficient evidence of a lack of good faith, given the debtor's current impoverished circumstances.

In *In re Syrus,* 12 B.R. 605, 4 C.B.C.2d 1172, CCH ¶ 68,310 (Bkrtcy.D.Kan.1981) this Court indicated that when a plan did not provide for substantial or meaningful repayment, that could be an extraordinary circumstance demonstrating a lack of good faith. This Court found that "substantial payment" had to be determined case by case from all the circumstances including: income, minimal living expenses, foreseeable extraordinary expenses, percentage of compromise, and the *nature of debts in the plan.*

■ Here the debtor's plan consists of most of the same debts listed in the prior Chapter 7 plan. Thus, the plan consists of debts previously determined not deserving of discharge because of the debtor's wrongful conduct. In the interests of comity and full faith and credit, this Court must give credence to Judge Barker's findings that the debtor committed bad acts under §§ 727(a)(3) and 727(a)(4).

Given the nature of the debts in the plan and the fact that the debtor proposed a low ten percent compromise of unsecured debts, the Court finds that the debtor's plan fails to provide for substantial or meaningful repayment. Moreover, the Court finds an

obvious intent to abuse the purpose and spirit of the Code by proposing a Chapter 13 plan just three months after his Chapter 7 discharge was denied. This is not a case where a debt was previously declared non-dischargeable because of the debtor's misconduct in incurring the debt. The Code allows for the compromise of § 523 debts. Rather, this is a case where the debtor's misconduct was so pervasive and consuming that he was denied a discharge in toto. The Court concludes that it would be manifestly unjust and inequitable to allow the debtor to compromise the Credit Union's claim and other unsecured claims at ten (10%) percent just three months later. Accordingly, the Credit Union's objection to confirmation with respect to § 1325(a)(3) is sustained and confirmation is denied.

IT IS SO ORDERED.