**In re COONES RANCH, INC., a South Dakota corporation, Debtor.**

**Bankruptcy No. 91–40183–PKE.**

United States Bankruptcy Court, South Dakota, S.D.

June 24, 1991.

252

Cecelia A. Grunewaldt, Sioux Falls, S.D., for debtor.

Clifton R. Jessup, Jr. of Dixon & Dixon, Dallas, Tex., and Robert Hayes of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for creditor MONY.

Thomas M. Hogan of Casper, Wyo., and Rick Entwistle of Woods, Fuller, Shultz, & Smith, P.C. of Sioux Falls, S.D. for FDIC.

Charles L. Nail, Jr., Asst. U.S. Trustee.

Bruce J. Gering, Sioux Falls, S.D., for U.S. Trustee.

## MEMORANDUM OF DECISION RE: MOTIONS TO DISMISS, MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY, AND MOTIONS TO TRANSFER VENUE

IRVIN N. HOYT, Chief Judge.

The matters before the Court are the Motion to Dismiss, Motion for Relief From the Automatic Stay, and Motion to Transfer Venue filed by The Mutual Life Insur-

ance Company of New York and the Motion to Dismiss, Motion for Relief From the Automatic Stay, and Motion to Transfer Venue filed by the Federal Deposit Insurance Corporation and Debtor's responses thereto. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2). These Findings and Conclusions are entered in compliance with Bankr.R. 7052.

### I.

James A. and Cindy L. Coones filed a Chapter 11 petition for reorganization in the District of Wyoming on October 20, 1989. There were no scheduled priority creditors. Scheduled major secured creditors included The Mutual Life Insurance Company of New York ("MONY") with a disputed claim of $994,097.05 and the Federal Deposit Insurance Corporation ("FDIC") with a disputed claim of $566,-782.30. There were only two other secured creditors whose claims totaled $30,844.97. There were two unsecured creditors whose claims totaled $11,150.00 and one unsecured creditor with a tort claim of unknown value. All of Coones' real property, which is located in Campbell County, Wyoming, was mortgaged.

By Order entered July 19, 1989, the United States Bankruptcy Court for the District of Wyoming [1] granted MONY's Motion for Relief From the Automatic Stay to permit the movant to foreclose on its security interest in Coones' real property. The Court valued MONY's collateral at $730,000.00. It also found that MONY was undersecured. By Notice dated July 28, 1989, Coones appealed the Order granting MONY's Motion for Relief From the Automatic Stay. The appeal is pending before the United States District Court for the District of Wyoming.

By Order entered February 8, 1990, the Bankruptcy Court for the United States District of Wyoming denied Coones' motion to convert their Chapter 11 case to a Chapter 12 proceeding. By Notice dated March 19, 1990, Coones appealed that Order. The appeal is pending before the United States District Court for the District of Wyoming.

By Order entered March 23, 1990, the Bankruptcy Court for the District of Wyoming granted Federal Deposit Insurance Corporation's (FDIC's) Motion to Modify Stay.

James A. Coones' Chapter 11 case was dismissed by Order entered March 29, 1990. The Court found that:

1. There has been continuing loss to and diminution of the estate and that there is a complete absence of a reasonable likelihood of rehabilitation; and

2. The debtors have shown an inability to effectuate a plan of reorganization;

3. The court has denied confirmation of every proposed plan to date and denied the debtors' request for additional time to file another plan or a modification of a plan.

Cindy Coones' Chapter 11 case was converted to a Chapter 7 proceeding at her election and the Coones' bankruptcy estate was deconsolidated by Order entered April 13, 1990.

By Notice dated April 3, 1990, Coones appealed the Order granting FDIC's motion for relief from the automatic stay and the Order dismissing James A. Coones' Chapter 11 case. The appeal is pending before the United States District Court for the District of Wyoming.

On or about April 12, 1990, Coones filed a Motion for Stay Pending Appeal. Therein, Coones asked the Bankruptcy Court for the District of Wyoming to stay all foreclosure and repossession actions by MONY or FDIC pending disposition of their appeals of the Order granting FDIC relief from the automatic stay and the Order dismissing their Chapter 11 case. The Motion for Stay Pending Appeal was granted by Order entered April 23, 1990. By Order on reconsideration filed June 26, 1990, the court ordered that the April 23, 1990 Order would be vacated if Coones failed to obtain, within five days of the Order, a $152,000.00 surety bond with FDIC as the loss payee to cover FDIC's cash collateral principal plus interest. The court found that the Coones

---

1. The Honorable Harold Mai presiding.

had used $40,000.00 of FDIC's cash collateral but had not replenished that sum in the Coones' cash collateral account established by the court and that the Coones' delays in the case "have irreparably harmed the secured creditors of the Estate who must also be afforded equitable rights under the Bankruptcy Code." The Coones did not timely post a bond and the court refused Coones' several motions to modify or vacate its order regarding the bond and the stay pending appeal. The United States District Court for the District of Wyoming affirmed the actions of the Bankruptcy Court by Order entered November 20, 1990.

By Notice of Sale dated October 22, 1990, James A. Coones informed FDIC and Farmers Cooperative Association that he was going to market at public sale at St. Onge, South Dakota on October 26, 1990

all of the Cows, Heifers and Calves pursuit [sic] to enforcement of [James A. Coones'] Lien Statement filed October 10, 1990 and recorded in Book 29 of Liens on pages 338–341. The Sale shall be held to satisfy the lien in the amount of $119,127.08.

James C. Coones sold his cattle to enforce his lien for costs accrued while he was a Chapter 11 debtor-in-possession and because he could not afford to feed them through the coming winter. James A. Coones testified that he directed the St. Onge livestock market to issue the sale proceeds check to himself, FDIC, and Farmers Coop as joint payees. The check was issued to James A. Coones.

By Order dated November 9, 1990, the District Court for the Sixth Judicial District of the State of Wyoming[2] entered an Order Granting Preliminary Injunction upon Motion by FDIC. Therein, the court ordered, because of the past behavioral pattern of James A. Coones, that the Coones and any associated party

are enjoined and restrained from encumbering, hypothecating, spending, disposing of, or otherwise transferring any personal property of the Defendants in which the [FDIC] has claimed an interest, including, but not limited to, the [Coones'] net sale proceeds from sale (after payment of costs) of the cattle sold on or about October 26, 1990 in St. Onge South Dakota plus those funds on deposit in Account NO. 3260–25–990–1, entitled "James A. Coones, Special Account, 340 S.A. Rd., Arvada, Wyoming 82831" at Key Bank of Wyoming, Gillette, Wyoming with an approximate balance of $62,515.27.

On December 13, 1990, James C. Coones opened an account at First National Bank in Buffalo, Wyoming in the name of Coones Ranch, Inc., with a net deposit of $23,000.00. A lawfully created corporation named Coones Ranch, Inc., did not exist on that date. While James A. Coones had contemplated incorporation of his ranch to foster a divorce settlement several years prior, he had taken no steps to do so prior to March 8, 1991.

By Notice filed February 7, 1991, the Sheriff's office of Campbell County, Wyoming announced the public sale on March 12, 1991 of Coones' real property to satisfy MONY's mortgages as provided by a Summary Judgment entered September 12, 1988 by the District Court, Sixth Judicial Circuit for the State of Wyoming.

On or about Friday, March 8, 1991, James A. Coones employed Sioux Falls attorney David O. Carter to create the corporation Coones Ranch, Inc. James A. Coones wanted to incorporate his ranch in South Dakota so that he could avoid future liability problems and increase his profits by wintering cattle in South Dakota and because, "There was so many legal problems under my own name in Wyoming that I thought I needed a different entity."

On or about Sunday, March 10, 1991, James A. Coones contacted Cecelia A. Grunewaldt to represent Debtor as bankruptcy counsel. The action was initiated by James A. Coones on Sunday, March 10, 1991, after his Wyoming bankruptcy attorney advised him that the foreclosure sale in Wyoming was not stayed.

---

**2.** The Honorable Terrance L. O'Brien presiding.

Necessary paper work for the incorporation of Coones Ranch, Inc., was completed Monday, March 11, 1991 and the first meeting of the incorporator and the first meeting of the board of directors was held that day. According to the minutes of the board of directors meeting, James A. Coones[3] was the sole shareholder and sole director, and he was elected to hold all offices of the corporation. The board established the principal office and place of business for the corporation at 340 SA Road, Arvada, Wyoming 82831. All shareholder meetings were directed to be held at that address and all books and records of the corporation were to be kept there. The board also designated the First National Bank, Buffalo, Wyoming as the depository for the corporation's funds and authorized James A. Coones to sign all instruments obligating the corporation or endorse all evidences of indebtedness payable to the corporation. The board authorized payment to Mr. Carter for his services regarding the incorporation and it hired the accounting firm of Dorr, Bentley & Pecca of Gillette, Wyoming. Consideration for James A. Coones' shares was $1,000.00. Most important, at this first meeting, the board also resolved that it should file a Chapter 11 petition for reorganization and it authorized the retention of Cecelia A. Grunewaldt to represent it concerning the bankruptcy petition. The board hired James A. Coones pursuant to an Employment Agreement. As its final agenda item that day, the board decided to lease office space at 300 North Dakota Avenue in Sioux Falls.

By BILL OF SALE/ASSIGNMENT dated March 11, 1991, James A. Coones of 340 SA Road, Arvada, Wyoming 82831, for the consideration of $10.00 transferred to Coones Ranch, Inc., certain identified personal property subject to any encumbrances of record. The property included vehicles, tractors, combines, farming implements, a Wyoming livestock brand, Conservation Reserve Program (CRP) payments and underlying contract, some feed and grain, a Bureau of Land Management lease

of forty acres, "Proceeds from the sale of livestock in October of 1990, at St. Onge, South Dakota, *only to the extent which such proceeds were secured to the [FDIC]*," and "Proceeds in the Key Bank of Gillette, Wyoming, acct. # 3260259901, *only to the extent which such proceeds were secured to the [FDIC]* [emphasis added]." By quit claim deed, James A. Coones transferred to Debtor on or about March 11, 1991, the ranch land in Wyoming subject to existing encumbrances. Debtor did not assume these debts by resolution of its board of directors. Neither MONY nor FDIC authorized the land transfer. James A. Coones did not receive compensation or any release from liability with this transfer.

On March 12, 1991 at 10:11 a.m., Coones Ranch, Inc., of Suite 206, 300 North Dakota Avenue, Sioux Falls, South Dakota ("Debtor"), filed a Chapter 11 petition for reorganization with the United States Bankruptcy Court for the District of South Dakota. Debtor stated it has $720,910.00 in total assets, $1,738,000.00 in total liabilities, $720,910.00 in secured debt, and $1,017,090.00 in unsecured debt. Other than the undersecured claims of FDIC and MONY, Debtor's unsecured debt includes only one unsecured claim for $1,652.10. James A. Coones testified Debtor filed bankruptcy so it could preserve its assets and his assets and to stop the March 12, 1991 foreclosure sale of the ranch real property.

At the time Debtor filed its petition: Debtor had no employees except James A. Coones and a secretary shared with other businesses in the same office building; all of Debtor's scheduled vehicles were titled in the name of James A. Coones; it did not have any office furnishings or equipment, including a telephone, other than those lent to it by its new landlord; Debtor did not have a bank account in South Dakota; James A. Coones, Debtor's only stockholder, officer, and director, did not reside in South Dakota; and Debtor had not conducted any business in South Dakota or elsewhere.

---

**3.** Pursuant to S.D.C.L. § 47–2–4, Debtor may not be a lawfully created corporation if the sole

incorporator was James A. Coones because he was not a resident of South Dakota.

James A. Coones had conducted some business in western South Dakota for a few years prior to 1991 by selling some cattle at markets, buying machinery in Rapid City and Sturgis, and by buying corn in Gregory.

On March 28, 1991, Debtor filed its schedules and statement of financial affairs. Scheduled secured creditors were:

| | |
|---|---|
| James A. Coones | $154,000.00; fully secured |
| Farmers Cooperative Assoc. | $ 20,000.00; fully secured |
| Farmers Home Administration | $?; guarantor of Stockmens Bank and Trust Company's loan |
| FDIC as receiver for Stockmens Bank and Trust Co. | $500,000.00; disputed with security valued at $168,797.84 |
| General Electric Credit Corp. | $ 6,890.00; security valued at $1,500.00 |
| MONY | $1,200,000.00; with security valued at $343,160.00 |

---

The only scheduled unsecured creditor was Farmers Coop Service with a claim of $1,652.10. Debtor listed two priority tax creditors with claims totaling $12,000.00. Debtor's assets included "Coones Ranch" in Campbell County, Wyoming valued at $343,160.00; cash on hand of $1,500; deposits totaling $174,572.76; vehicles and trailers valued at $35,575.00; three horses, nine head of cattle, and fifteen feeder pigs with a total value of $7,900.00; a brand valued at $100.00; farming equipment, supplies, and implements valued at $92,805.00; some grain, straw, and hay valued at $8,810.00; a mobile home valued at $1,500.00; and a CRP contract valued at $49,500.00.

In late March, 1991, Debtor hired three ranch hands to work in Wyoming. On April 5, 1991, Debtor obtained farm owners and farm liability insurance for April 5, 1991 through April 5, 1992 from National Farmers Union. On April 30, 1991, Debtor obtained vehicle insurance for April 1, 1991 through October 1, 1991 from State Farm Mutual Automobile Insurance Company. On April 23, 1991, Debtor opened an account at Norwest Bank South Dakota in Sioux Falls with a deposit of $14,408.00. The signature card designated it as a Debt-

or in Possession account. The funds were from the sale of wheat. Debtor deposited the funds in response to the Court's Order entered March 28, 1991.[4]

By Decision Letter dated April 30, 1990, the District Court for the Eighth Judicial District of the State of Wyoming[5] dismissed a civil action James A. Coones had filed against FDIC. The court held that the plaintiff had failed to join indispensable parties. It further stated:

Despite all of the pending actions, the plaintiff attempted to transfer property subject to the defendant's security interest to a South Dakota corporation while Judge O'Brien's order Granting Preliminary Injunction against such transfer was in effect.

It is clear to this Court that the plaintiff is attempting to circumvent the judicial process. The court further finds that the defendant, F.D.I.C. has diligently pursued their legal remedies in spite of the delaying actions of the plaintiff.

The Order dismissing the complaint with prejudice was entered May 20, 1991.

On May 13, 1991 James A. Coones, as president of Coones Ranch, Inc., signed a completed Wyoming Workers' Compensa-

---

4. The Honorable Peder K. Ecker presiding.

5. The Honorable William A. Taylor presiding.

tion Report of Employees Total Earnings. He alleged that the form was issued in the name of "COONES, JAMES A." because Wyoming state officials had not had time to change the name to Debtor's. Three ranch hands and their gross wages were listed.

On May 29, 1991, the District Court for the Sixth Judicial Circuit for the State of Wyoming entered an Order to Show Cause Why Party Should Not Be Punished For Contempt. Therein, the court ordered James A. Coones to appear before it on June 10, 1991 to show cause why he should not be adjudged in contempt of the court's November 9, 1990 Order Granting Preliminary Injunction for transferring to Coones Ranch, Inc., his personal property as described in the Bill of Sale/Assignment dated March 11, 1991.

On March 28, 1991, MONY filed a Motion for Transfer of Venue, which asked this Court to transfer the case to the United States Bankruptcy Court for the District of Wyoming, a Motion for Relief From the Automatic Stay, and a Motion to Dismiss Chapter 11 Case. In these pleadings, MONY recited the litany of Coones' unsuccessful Chapter 11 case in the District of Wyoming and argued Debtor was created and put into Chapter 11 in South Dakota in a bad faith attempt to stall the foreclosure sale scheduled for March 12, 1991. FDIC requested the same relief by Motions filed April 29, 1991. Hearings on all six Motions were scheduled for May 16, 1991. Responses were to be filed five days before the hearing. Debtor did not file any timely responses nor request an extension of time in which to do so.

The May 16, 1991 hearing was rescheduled by the Court sua sponte to June 5, 1991 due to the unavailability of Debtor's bankruptcy counsel.

Debtor resisted the six Motions by pleading filed May 31, 1991. Debtor argued that South Dakota was as convenient a venue as Wyoming and that economic administration warranted retention of jurisdiction by this Court. Debtor argued, in objection to MONY's relief from stay motion and the motion to dismiss, that its Chapter 11 case

was filed in good faith, all property was necessary for an effective reorganization, and it had a reasonable plan for an effective reorganization. In response to FDIC's motion for relief from stay and motion to dismiss, Debtor claimed FDIC was adequately protected and it reiterated its arguments that Debtor could successfully reorganize.

James A. Coones rented an apartment in Sioux Falls and registered to vote in Minnehaha County on June 3, 1991, the day before the scheduled hearing on MONY's and FDIC's six motions.

On June 4, 1991, the day of the hearing, Debtor filed amendments to its schedule of personal property. The amendments declared that deposits, vehicles and trailers, livestock, farming equipment, other machinery and equipment, grain, hay, and straw inventory, and brand previously scheduled were Debtor's property *only to the extent that they were secured to FDIC*, i.e., if the scheduled personalty was not pledged to FDIC, it was not property of the estate.

A consolidated hearing on all six motions was held June 5, 1991. Appearances included Robert Hayes and Clifton R. Jessup, Jr., for MONY; Frederick M. Entwistle and Thomas M. Hogan for FDIC; Cecelia A. Grunewaldt for Debtor; and Charles L. Nail, Jr., Assistant U.S. Trustee, and Bruce J. Gering for the United States Trustee. The only witness presented by all parties was James A. Coones.

At the hearing Debtor projected its income would be $315,621.00 for March 1991 to March 1992. Debtor projected its expenses would be $177,712.00 for the same period. Debtor did not present historical data or other relevant information to support these projections. Debtor offered, as adequate protection, a replacement lien and future profits from the sale of some heifers and bulls. Debtor does not presently own these heifers or bulls and did not have sufficient available cash or credit to purchase the livestock. Debtor offered, as tentative plan treatment, to pay FDIC a total of $354,112.00 over fifteen years, including ten percent interest and MONY, a

total of $343,160.00 over twenty-five years, including ten and a half percent interest. Debtor did not present any credible evidence to support its valuation of the creditors' claims or the secured property. Debtor acknowledged that land values in Wyoming had not decreased in the past several years.

All matters were taken under advisement and the parties were ordered to file proposed findings of fact and conclusions of law on or before June 12, 1991.

## II.

### A.

■ Cause for dismissing a Chapter 11 petition includes bad faith on the part of the debtor. *First National Bank v. Kerr (In re Kerr)*, 908 F.2d 400, 404 (8th Cir. 1990). Bad faith warranting dismissal includes concealment, evasion, and direct violations of the Code or court order that clearly establish an improper motive. *Kerr*, 908 F.2d at 404. Violations of the Code or court order include self-dealing and asset manipulation without court approval. *Id.* Evasion and Code violations may be shown by a debtor's filing of frivolous motions or commencement of actions in an effort to frustrate creditors. *Id.* Before dismissing a case for a bad faith filing, the court may need to consider whether reorganization is possible. *Kerr*, 908 F.2d at 404 and 404 n. 10.

■ A lack of good faith in filing a Chapter 11 petition also may be shown by the existence of several, but not all, of the following conditions:

a. The debtor has one asset, such as real property;

b. Liens encumber the property;

c. There are generally no employees except for the principals;

d. There is little cash flow and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

e. There are few, if any, unsecured creditors whose claims are relatively small;

f. The property has been posted for foreclosure and the debtor has been unsuccessful in defending against the foreclosure or the debtor and a creditor have proceeded to a stand-still in state court litigation and the debtor has lost or has been required to post a bond that it cannot afford; and

g. There are allegations of wrongdoing by the debtor or its principals.

*Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.*, 779 F.2d 1068, 1072–73 (5th Cir.1986); *accord Kerr*, 908 F.2d at 404 and 404 n. 9. These conditions may manifest themselves as "the new debtor syndrome" where a one-asset entity was created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors. *Id.*

■ The filing of successive petitions in bankruptcy also may be indicia of a bad faith filing where there is no bona fide change in circumstances that justify the multiple filing or where the subsequent filing was designed to frustrate statutory requirements and abuse the bankruptcy process. *Schuldies v. United States (In re Schuldies)*, 122 B.R. 100, 101–02 (D.S.D. 1990). Factors to consider include, but are not limited to, the length of time between petitions, whether the filing was made to induce the automatic stay, the debtor's efforts to comply with a previously confirmed plan, and whether a debtor is making multiple attempts at a fresh start. *Id.* at 103.

■ Upon consideration of the evidence presented, this Court concludes that Debtor has filed its Chapter 11 petition in bad faith. First, Debtor's principal, James C. Coones, directly violated orders of the District Court for the Sixth Judicial District of the State of Wyoming by selling cattle in which FDIC claims a secured interest and by transferring real and personal property to Debtor via a quit claim deed and Bill of Sale/Assignment. Second, James C. Coones manipulated assets and self-dealt when he sold cattle while trying to enforce a lien he claims arose for costs incurred in caring for the cattle while he was a debtor-

in-possession. Third, James C. Coones' efforts to create a new corporation and reorganize the transferred debts was inconsistent with his appeal of the dismissal of his Chapter 11 case and other adverse orders.

Fourth, Debtor's petition is a classic example of a bad faith filing arising from "new debtor syndrome." All assets that James C. Coones purportedly transferred to Debtor were heavily encumbered; he retained all unsecured assets, if any, for himself. Debtor had no employees when it filed, other than James C. Coones and a shared secretary. Debtor had no cash flow or ongoing business when it filed. Debtor demonstrated no ability, equal to or above that of James C. Coones, to reorganize the same debts on fewer assets with greater overhead expenses. Other than the undersecured claims of FDIC and MONY, Debtor has only one unsecured claim holder with a small claim. James C. Coones' real property, purportedly transferred to Debtor, was the subject of a foreclosure sale on the day Debtor filed its petition and James C. Coones' efforts to stop the sale in state court or in his Chapter 11 bankruptcy case were unsuccessful. Further, both James C. Coones and Debtor's counsel admitted that James C. Coones came to South Dakota and created a different legal entity because James C. Coones had exhausted his legal remedies in the Bankruptcy Court for the District of Wyoming and because James C. Coones' efforts in Wyoming state courts had been unsuccessful. Debtor could not identify any legitimate reason why it incorporated in South Dakota nor could it establish any legitimate reason to have an office in South Dakota, especially in Sioux Falls.

Fifth, Debtor's petition in bankruptcy was essentially a bad faith effort by James C. Coones to file a successive petition in another jurisdiction. There were no bona fide changes in Debtor's financial circumstances from those of James C. Coones' and Debtor's petition was an attempt to circumvent the results of James A. Coones' reorganization attempt in the Bankruptcy Court for the District of Wyoming.

Finally, at least three other courts have noted James C. Coones' abuse of the legal process. The District Court for the Sixth Judicial District of the State of Wyoming, by entry of its preliminary injunction on November 9, 1990, has determined that James C. Coones should be prohibited from further manipulation of property secured to FDIC. The District Court for the Eighth Judicial District of the State of Wyoming has concluded that James C. Coones has attempted to circumvent the judicial process and has delayed the actions of the FDIC, and the United States Bankruptcy Court for the District of Wyoming has concluded that James C. Coones' delays in that bankruptcy case have irreparably harmed secured creditors.

### B.

Cause for dismissing a Chapter 11 case may also include a debtor's inability to reorganize timely. *Kerr*, 908 F.2d at 404; *see also United States Savings Association v. Timbers of Inwood Forest, LTD. (In re Timbers of Inwood Forest, LTD.)*, 484 U.S. 365, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988);

> The movant may meet his burden [to establish cause] by showing the debtor will not be able to generate sufficient income to fund a plan or that reorganization will not improve a debtor's income generation. [Citations omitted.] Once the movant has met his initial burden, the burden may shift to the debtor to demonstrate "that [he has] at least some chance of achieving every stage of [his reorganization] proposal."

*In re Travis*, Case No. 90–10094–INH, slip. op. at 4, 1991 WL 331675 (Bankr.D.S.D. April 5, 1991) (quoting *In re Minnesota Alpha Foundation*, 122 B.R. 89, 94 (Bankr.D.Minn.1990)).

A Chapter 11 case in its early stages should be dismissed only upon a showing of bad faith or if "there is no more than a 'hopeless and unrealistic prospect' of rehabilitation." *Travis*, slip. op. at 4 (quote therein). A showing of feasibility must be "rooted in predictions based on objective fact." *Clarkson v. Cooke Sales and Ser-*

*vice Co. (In re Clarkson),* 767 F.2d 417, 420 (8th Cir.1985).

When the facts of this case are considered in light of the above-recited law, it is clear that MONY and FDIC met their burden of showing Debtor's inability to reorganize timely. They demonstrated that Debtor was proposing a plan similar to those rejected by the Bankruptcy Court for the District of Wyoming, that Debtor could not offer adequate protection of their secured claims, and that Debtor did not have the financial resources to recapitalize the business absent continued use of substantial sums of their cash collateral. Debtor, however, failed to meet its burden to demonstrate that it had at least some chance of achieving every stage of its reorganization proposal. Debtor offered no credible evidence of the values of FDIC's and MONY's secured claims or of the value of the real property. In fact, Debtor's value of the real property was substantially less than the value set by James C. Coones' own appraiser and less than one-half the value determined by the Bankruptcy Court for the District of Wyoming after an evidentiary hearing. While Debtor hoped it would soon get the Court's permission to use the escrowed funds from the October, 1990 cattle sale, in which FDIC claims a secured interest, to establish a new cattle herd, Debtor failed to present any evidence that FDIC had no interest in these funds or that it could offer FDIC adequate protection. Debtor completely failed to show how it could increase its income sufficient to fund a plan. Debtor was even unable to convince the Court that James C. Coones' CRP contract could be transferred to Debtor lawfully and that James A. Coones had taken the steps necessary to make that transfer binding.

The facts of this case amply demonstrate that the Debtor's petition was filed in bad faith and, although this case is in its early stage, that Debtor does not have a reasonable possibility of a successful reorganization within a reasonable time. While either Debtor's bad faith filing or its inability to reorganize standing alone constitutes cause for dismissal, both grounds are present here and the Court is obligated to dismiss the case under the mandates of the Bankruptcy Code. An order dismissing the case will be entered. The order also will acknowledge that MONY's and FDIC's Motions for Relief From the Automatic Stay and Motions to Transfer Venue are rendered moot by the dismissal of the case.